**Affirm and Opinion Filed July 10, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00915-CV**
_____

**STANISLAV BILDER, Appellant**
**V.**
**LESYA O. WHITE (AKA LESYA O. SYSTNIANSKA AND OLGA LESYA WHITE), Appellee**

**On Appeal from the 468th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 468-54426-2022**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Molberg

Stanislav Bilder challenges the two-year protective order prohibiting him from, among other things, committing domestic violence against Lesya O. White, appellant's former spouse, as well as members of her household. In a single issue, appellant contends the evidence is legally and factually insufficient to support the protective order. We overrule appellant's issue and affirm the trial court's protective order.

## Background

Appellant and appellee divorced in 2014. Although divorced, they are involved in ongoing litigation, both civil matters and matters pertaining to the family law claims involving their child. In July 2019, while other litigation was pending, appellee filed for a protective order under the provisions of the family code alleging appellant committed family violence against her. According to appellee, in addition to other vandalism, the brake lines on her car were cut on repeated occasions. All of the vandalism occurred at night where her car was parked in front of her apartment. After entering a temporary ex parte protective order, the trial court conducted an evidentiary hearing on appellee's application.

At the hearing, appellee testified that sometime between April 8 and April 10, 2022, someone cut the brake lines on her car. When appellee drove her car, she was unable to stop the car as usual, and the dashboard lights came on. Appellee attempted to stop, but the brakes were "really soft" and she had to "push them to the floor." Appellee had the car repaired. She did not call the police because she thought the problem was due to the age of her car. However, about a week later, the same thing happened. This time, she called the police and reported her brake lines had been cut. Again, she had the brakes repaired.

A little over a month later, on May 26, 2022, someone cut the brake lines for the third time, and appellee again reported the incident to the police. Appellee explained a hearing involving appellant had been set for earlier that day, but had

been reset to a later date. Her car was vandalized later that evening. On May 30, 2022, appellee's car was vandalized "even more." The car had been spraypainted, had expandable foam put into the muffler, and "dog poop" had been "liquefied and poured all over the car." Appellee was able to obtain a video of that night from a neighbor's security camera. The video showed a man approach her car. Clips from the video showed the man walking around the car for about an hour. At one point the man crouched down underneath the car. Appellee testified she could see "the structure of [a man's body], his legs, and the posture of the way he walks." Based on the man's posture and gait, she identified the man in the video as appellant.

On July 25, 2022, the brake lines on the car were cut for the fourth time. In addition, "paint was poured all over the car and it was poured into the gas tank." Appellee was able to obtain a video of the incident with a time stamp showing the car was vandalized from 5:19 a.m. – 5:28 a.m. The video showed an individual at the back of appellee's car. The individual on the video was seen walking away from the car holding two different bags. She again reported the incident to the police. Appellee also explained her car was the only one targeted for vandalism; no other cars at the complex were targeted. According to appellee, the car could not be repaired for less than the value of the car, and so it was not repaired. Appellee also testified she "absolutely" was afraid not only for her own physical safety, but also for her children's and her current husband's safety. She explained that because of

the escalation from the brake lines being cut to "totaling her car altogether" she did not think the vandalism would stop without intervention.

Appellant also testified at the hearing. He denied vandalizing appellee's car. According to appellant, he hosted a gathering at his home in Austin on the evening of July 24, and it lasted until around 2:00 a.m. on the morning of July 25—the night that appellee claimed her brake lines were cut for the fourth time. Appellant provided a video recording from his home security camera showing him at his home in Austin at 7:09 a.m. on July 25. On cross-examination, appellant stated he did not know whether it was possible to change the time zone on the security camera. Appellant also provided a video showing a custody exchange. During questioning regarding that video, appellant admitted he "edited the time stamp." Father also provided some receipts showing he was not in Dallas at the time of the vandalisms. One of the receipts was from the morning of May 30, 2022, one of the occasions on which appellee's car was vandalized, showing a cash purchase at about 1:40 a.m. at a Whataburger in Austin.

Appellant's sister testified she was at the gathering the evening of July 24. She confirmed appellant was in Austin that evening and went to bed around 2:00 a.m.

After hearing this and other evidence, the trial court made findings of fact and conclusions of law including that appellee's testimony was credible, that appellant had committed family violence toward appellee, and that it was likely to occur again

in the future. The trial court then granted the two-year protective order at issue in this appeal.

## Applicable Law

We review the sufficiency of findings supporting a protective order under the same standard used in evaluating the sufficiency of evidence following a jury verdict. *See Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *accord Pleasant v. Black*, No. 05-20-01040-CV, 2022 WL 807190, at *4 (Tex. App.—Dallas Mar.17, 2022, no pet.) (mem. op.). When, as here, a party who does not have the burden of proof challenges the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id*. at 810. If more than a mere scintilla of evidence exists, it is legally sufficient. *Lei Yang*, 629 S.W.3d at 670. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to

reach differing conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Lei Yang*, 629 S.W.3d at 670.

In a factual sufficiency review, we consider and weigh all the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). When an appellant challenges an adverse finding on an issue on which he did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Four J's Cmty. Living Ctr., Inc. v. Wagner*, 630 S.W.3d 502, 516 (Tex. App.—Houston [1st Dist.] 2021, pet. denied).

At the time of the protective order entered in this case, the family code provided that at the close of the hearing on the application for a protective order, the trial court was required to find whether family violence had occurred and was likely to occur in the future. TEX. FAM. CODE § 85.001.[1] If such findings were made, the trial court was required to render a protective order. *Id.* "Family violence" includes, among other things, actions by a member of a family of household against another member of the family or household that is intended to result in physical harm or bodily injury, or that places the member in fear of imminent physical harm or bodily injury. *See id.* § 71.004. A trial court can reasonably conclude future violence is

[1] Section 85.001 was amended effective September 1, 2023 and applies to all protective orders rendered after that date. *See* Act of May 24, 2023, 88th Leg., R.S., ch. 688, § 1, sec. 85.001(b), 2023 Tex. Sess. Law Serv. (to be codified at TEX. FAM. CODE § 85.001(b)).

likely to occur based on testimony showing a pattern of violent behavior. *Pleasant*, 2022 WL 807190, at *7.

**Analysis**

In his sole issue, appellant raises both legal and factual sufficiency challenges to the trial court's protective order. Appellant does not contend the vandalism of appellee's car could not be found to be family violence or that the repeated incidents would not support a finding that family violence was likely to occur in the future. Rather, according to appellant, the trial court erred in concluding the evidence was legally sufficient to show *he* committed family violence because the trial court's findings necessarily rest on an "inference piled on another inference." In particular, appellant contends the trial court inferred (1) he was the hooded figure on the video, (2) the hooded figure approached appellee's car (as opposed to the one next to it), and (3) the hooded figure caused the damage to appellee's car. Appellant also contends the trial court erred in concluding the evidence was factually sufficient to show he vandalized appellee's car because he produced evidence showing he could not have committed the vandalisms on May 30 or July 25, thus casting doubt on whether he committed any of the vandalisms. We will discuss each of appellant's contentions in turn.

With respect to appellant's contention that the trial court had to infer he was the hooded figure on the video, we disagree. Although appellee admitted the person's face could not be seen on the video, appellee testified she could identify

appellant as the person based on his gait and body structure. She testified she could identify him because "he spent a good hour walking around" her car in different videos and she could "see him at different angles." Similarly, we disagree the trial court had to infer that the figure on the video approached appellee's car, as opposed to the one next to it or some other car parked in the lot. The video shows the person circling appellee's car, not approaching any other car. The trial court did not need to infer the person on the video was targeting appellee's car. Finally, appellant contends it was necessary to infer the person on the video damaged appellee's car. Again, we disagree. Appellee testified that if the video was enlarged, the damage to the car could be seen. The videos were admitted into evidence for the trial court as the factfinder to evaluate. We conclude more than a scintilla of evidence supports the trial court's findings that appellant committed the vandalism of appellee's car.

As to the factual sufficiency of the evidence to support the family violence finding, the trial court, as the factfinder, was free to accept or reject all or part of each witness's testimony. *See Pleasant*, 2022 WL 807190 at *6. Although appellant's sister testified appellant was in Austin at 2:00 a.m. on July 25 and his home security system showed appellant at home around that time, the trial court was free to question the credibility of that evidence. Similarly, the trial court was free to conclude the receipt from the early morning of May 30 was not sufficient to show appellant was unable to have been in Dallas at that time. After considering all of the evidence in the record, including contradictory evidence presented by appellant, we

cannot conclude the evidence supporting the trial court's finding of past family violence is so weak or so contrary to the overwhelming weight of all the evidence as to be clearly wrong or unjust.

Thus, we conclude the evidence is legally and factually sufficient to support the trial court's findings that appellant committed family violence towards appellee and that it was likely to occur again in the future.

## Conclusion

We overrule appellant's issue and affirm the trial court's protective order.


220915f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

STANISLAV BILDER, Appellant

No. 05-22-00915-CV          V.

LESYA O. WHITE (AKA LESYA O. SYSTNIANSKA AND OLGA LESYA WHITE), Appellee

On Appeal from the 468th Judicial District Court, Collin County, Texas Trial Court Cause No. 468-54426-2022.
Opinion delivered by Justice Molberg. Justices Carlyle and Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee LESYA O. WHITE (AKA LESYA O. SYSTNIANSKA AND OLGA LESYA WHITE) recover her costs of this appeal from appellant STANISLAV BILDER.

Judgment entered this 10th day of July, 2023.